**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO: 24-14377-CIV-SMITH**

STEPHEN ALAN WINGO,

      Petitioner,

v.

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court pursuant to Petitioner, Stephen Allan Wingo's *pro se* Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 ("Petition") [DE 1]. For its consideration of the Petition, the Court has received the State's Response [DE 11] to this Court's Order to Show Cause [DE 7], and corresponding appendices [DE 12, 13].[1] After reviewing the pleadings and the record, for the reasons stated in this Order, the Petition is **DENIED**.

**I.      Background**

      **A.      Petitioner's State Criminal Proceedings**

On August 11, 2015, Petitioner was charged by Information with three counts of "showing obscene material to a minor," three counts of "lewd or lascivious exhibition," three counts of "video voyeurism," and one count each of "threats or extortion" and "contributing to the delinquency of a child," in violation of Florida law. (App'x to Resp. vol. 1 [DE 12-1] Ex. 4, at 1.) On June 7, 2017, the state filed a second amended Information, removing one count of "video

---

[1] Petitioner did not file a Reply in this matter.

voyeurism." (App'x to Resp. vol. 1 Ex. 6, at 1.) Through counsel, Petitioner filed a Motion to Sever counts seven through ten of the second amended Information, which included one count of threats or extortion, both remaining counts of video voyeurism, and one count of contributing to the delinquency of a child. (App'x to Resp. vol. 1 Ex. 7, at 2.) The court granted the motion and severed Petitioner's charges into two separate cases, denoted as Case No. 15-CF-590 (counts one through six) (the "15 Matter") and Case No. 17-CF-631 (counts seven through ten) (the "17 Matter"). (App'x to Resp. vol. 1, Exs. 8–10.) The state filed a superseding information in each case. (App'x to Resp. vol. 1 Ex. 9, at 1–2; App'x to Resp. vol. 1 Ex. 10, at 1–2).

After turning down plea offers, Petitioner proceeded to trial in both cases. (*See* Evid. Hearing Tr. [DE 13-7] 8, 22–23, 30, 52.) On July 14, 2017, Petitioner was found guilty of all counts in the 17 Matter (App'x to Resp. vol. 1 Ex. 11) and was sentenced to fifteen years of imprisonment on count one, five years each for counts two and three, and 364 days on count four, to be served consecutively. (App'x to Resp. vol. 1 Ex. 12, at 4–7.) Petitioner's conviction and sentence were upheld on direct appeal without comment. *Wingo v. State*, 266 So. 3d 847 (Fla. 2d DCA 2019).

## B.      Petitioner's Post-Conviction Proceedings

On June 6, 2018, Petitioner filed a motion to correct sentence challenging the fines imposed in his sentence. (App'x to Resp. vol. 1 Ex. 15.) The state trial court granted Petitioner's motion, ordering that "the written judgment and sentencing document for count 4" be "corrected to conform with the court's oral pronouncement imposing $500 fine plus $25 (5%) surcharge." (App'x to Resp. vol. 1 Ex. 17, at 1.)

On May 20, 2019, Petitioner filed a Motion for Reduction or Modification of Sentence pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure. (App'x to Resp. vol. 2 [DE

12-2] Ex. 22, at 1.) The court denied Petitioner's motion. (App'x to Resp. vol. 2 Ex. 23, at 1.)

Then, on December 6, 2019, Petitioner filed a Motion for Postconviction Relief under Rule 3.850 of the Florida Rules of Criminal Procedure. (App'x to Resp. vol. 2 Ex. 27.) He then filed an amended Motion for Postconviction Relief on April 15, 2020, in which he raised claims identical to those brought in the instant Petition against counsel in the 17 Matter ("Counsel"). (App'x to Resp. vol. 2 Ex. 30, at 4–45.) The court ("Rule 3.850 Court") ordered the state to respond to Petitioner's motion (App'x to Resp. vol. 3 [DE 12-3] Ex. 32, at 1–2), and the state did so on June 24, 2020. (App'x to Resp. vol. 3 Ex. 33, at 1). Following the state's response, the Rule 3.850 Court denied claims one, three, five, seven, and eight of the motion, and scheduled an evidentiary hearing on the remaining claims. (App'x to Resp. vol. 3 Ex. 34, at 1–4.)

At the evidentiary hearing, Petitioner testified that (1) Counsel failed to convey a plea offer to him (Evid. Hearing Tr. 8–13); (2) Counsel told him to ask his father to contact his wife Jessica Wingo—who was a state witness and the victim's mother—to tell her that he was "sorry" and to ask her to "take it easy on" him (Evid. Hearing Tr. 13–14); and (3) he never told Counsel that he was guilty (Evid. Hearing Tr. 14–15). However, Counsel testified that (1) he was "certain" that he "conveyed every plea offer to" Petitioner (Evid. Hearing Tr. 30); (2) he never advised Petitioner to call his father, and in fact told him that his phone calls from jail would be recorded (Evid. Hearing Tr. 28–29); and (3) Petitioner "admitted" that he committed the crimes (Evid. Hearing Tr. 32). Ultimately, based on-part on the credibility of Counsel's testimony, the Rule 3.850 Court ruled against Petitioner and denied his Rule 3.850 Motion. (App'x to Resp. vol. 2 Ex. 34, at 1–4; App'x to Resp. vol. 2 Ex. 35, at 1–5.) Petitioner's appeal was denied without comment. *Wingo v. State*, 395 So. 3d 1093 (Fla. 6th DCA 2024).

On October 29, 2024, Petitioner filed the instant Petition, raising the same nine claims as

3

included in his amended Rule 3.850 Motion. (*See* Pet.) On November 22, 2024, this Court entered an Order to Show Cause [DE 7], to which the Government responded on January 10, 2025 [DE 11]. Petitioner did not file a reply. This matter is therefore ripe for review.

## II.     Standard of Review

### A.     The Antiterrorism and Effective Death Penalty Act ("AEDPA")

A prisoner in state custody may not be granted a writ of habeas corpus for any claim that was adjudicated on the merits in state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "based on an unreasonable determination of the facts in light of the evidence presented" to the state court. 28 U.S.C. § 2254(d).

A state court decision is "contrary to" or involves an "unreasonable application of" clearly established federal law when the state court's decision conflicts with governing Supreme Court precedent. *See Hall v. Head*, 310 F.3d 683, 690 (11th Cir. 2002) (citing *Williams v. Taylor*, 529 U.S. 362, 404–06 (2000)); 28 U.S.C. § 2254(d)(1). Such a conflict exists within the meaning of § 2254(d)(1) if the state court either "applies a rule that contradicts the governing law set forth" by the Supreme Court or "confronts a set of facts that is materially indistinguishable from a" Supreme Court decision and nevertheless arrives at a different result. *Brown v. Payton*, 544 U.S. 133, 141 (2005). However, in adjudicating a petitioner's claim, the state court need not cite to nor be aware of relevant Supreme Court decisions. *See Early v. Packer*, 537 U.S. 3, 8 (2002). As long as neither the reasoning nor the result of the state court decision contradicts Supreme Court precedent, the state court's decision will not be disturbed. *Id*. Importantly, a court "will not find an unreasonable application if 'fairminded jurists could disagree on the correctness of the state court's decision.'" *Burton v. Comm'r, Ala. Dep't of Corr.*, 700 F.3d 1266, 1269 (11th Cir. 2012) (citing *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). Instead, a state court's decision must be

4

"objectively unreasonable, not merely wrong" for it to involve an "unreasonable application of" Supreme Court case law. *Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017) (quoting *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017) (per curiam)).

Additionally, even if a "state court made a clearly erroneous factual determination," this alone "doesn't necessarily mean the state court's 'decision' was 'based on' an 'unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Pye v. Warden, Va. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022) (citing 28 U.S.C. § 2254(d)(2)). Instead, such a determination depends on "the importance of the factual error to the state court's ultimate 'decision.'" *Id.*

Moreover, the Supreme Court has repeatedly held that, in actions brought under § 2254, "[t]he petitioner carries the burden of proof" and that the burden is intentionally "difficult to meet." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Richter*, 562 U.S. at 102; *see also Renico v. Lett*, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts"). State court decisions, including summary decisions, are thus afforded significant deference in § 2254 actions. *See Renico*, 559 U.S. at 773 ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings . . . and demands that state-court decisions be given the benefit of the doubt" (citations and internal quotation marks omitted)); *see also Richter*, 562 U.S. at 99 (concluding that the summary nature of a state court's decision does not lessen the deference that it is due). As a result, "[f]ederal courts may grant habeas relief only when a state court blundered in a manner so well understood and comprehended in existing law and was so lacking in justification that there is no possibility fairminded jurists could disagree." *Tharpe v. Warden*, 834 F.3d 1323, 1338 (11th Cir. 2016) (citations and quotations omitted).

## B. Ineffective Assistance of Counsel

The United States Supreme Court clearly established the law governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). To properly allege ineffective assistance of counsel, *Strickland* requires a criminal defendant show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Id*. at 687.

As to the first prong, deficient performance means performance "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The judiciary's scrutiny of counsel's performance is "highly deferential." *Id*. at 689. To show deficient performance, a petitioner has the burden of proving that the attorney's error was "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Even if counsel's conduct "was far from exemplary," a court may still withhold relief if the "'record does not reveal' that counsel took an approach that no competent lawyer would have chosen." *Dunn v. Reeves*, 594 U.S. 731, 739 (2021) (quoting *Burt v. Titlow*, 571 U.S. 12, 23–24 (2013)). However, the right to effective assistance of counsel may be "violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (citations omitted).

As to the second prong, a defendant establishes prejudice by showing that, "but for counsel's unprofessional errors," there is a reasonable probability that "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings, *id*., and the likelihood of a different result must be "'substantial,' not just 'conceivable.'" *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (quoting *Pinholster*, 563 U.S. at 189).

6

A defendant must satisfy both the deficiency and prejudice prongs set forth in *Strickland* to obtain relief on an ineffective assistance of counsel claim. *See Strickland*, 466 U.S. at 687. Failure to establish either prong is fatal, making it unnecessary to consider the other. *See id.* at 697.

Combining AEDPA's habeas standard and *Strickland*'s two-pronged test provides the relevant inquiry for Petitioner's ineffective assistance of counsel claims. To obtain habeas relief, Petitioner must show that the state post-conviction court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 699 (2002). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly;" instead, AEDPA "authorizes federal-court intervention only when a state-court decision is objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002) (citations omitted). As a result, "a state court has even more latitude to reasonably determine that a defendant has not satisfied" the *Strickland* standard. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (calling the standard "doubly deferential").

## C.     The "Look Through" Presumption

In *Wilson v. Sellers*, 584 U.S. 122 (2018), the United States Supreme Court concluded there is a "look through" presumption in federal habeas corpus law. *Id.* at 125. Where the state court's adjudication on the merits of a claim is unaccompanied by an explanation, a federal habeas court is permitted to "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id*. Then, the federal habeas court should "presume that the unexplained decision adopted the same reasoning." *Id*.; *see also Kernan v. Hinojosa*, 578 U.S. 412, 415 (2016) (per curiam) (recognizing the presumption that courts generally "affirm[] without further discussion when they agree, not when they disagree"). Accordingly, state court decisions are afforded significant deference, even when the state court summarily adjudicates a petitioner's

7

claim without an accompanying statement of reasons. *Richter*, 562 U.S. at 99. However, "[w]here there are convincing grounds to believe the silent court had a different basis for its decision than the analysis followed by the previous court, the federal habeas court is free . . . to find to the contrary." *Wilson*, 584 U.S. at 134.

## III.    Discussion

### A.    The Rule 3.850 Court's decision on Claim 1 did not involve an unreasonable application of clearly established federal law.

In Claim 1 of the Petition, Petitioner argues that Counsel was ineffective for failing to file a motion for a new trial (1) based on the weight of the evidence, (2) to test victim S.I.'s[2] testimony, and (3) based on the state's failure to disclose S.I.'s change in testimony, in violation of *Giglio*.[3] (Pet. 7–13.) At a pre-trial deposition, S.I. had originally stated that she didn't "think" that she had sent any inappropriate images of L.A. to Petitioner. (Trial Tr. vol. 2 [DE 13-4] 155–57.) However, at trial, she changed her testimony, stating that she had sent an inappropriate photo or video of L.A. to Petitioner while she was in the shower. (Trial Tr. vol. 2 124–27, 155–57.) Petitioner argues that Counsel was "required" to file a motion for a new trial after the state closed its case because S.I. "gave testimony that conflicted with the evidence." (Pet. 7–8.) Petitioner also alleges that S.I. perjured herself and that the state was required to disclose this change in testimony. (Pet. 8–13.)

When considering this claim, the Rule 3.850 Court considered Petitioner's three "subclaims" individually. First, it concluded that law and facts exist to support Petitioner's conviction and sentence, as demonstrated by the jury's conclusion and the appellate court's ruling affirming Petitioner's conviction and sentence. (App'x to Resp. vol. 3 Ex. 34, at 1.) Second, it

---

[2] Because the victims involved in Petitioner's criminal prosecution were minors at the time of the offense, they are referred to by their initials rather than their full names.

[3] *Giglio v. United States*, 405 U.S. 150 (1972).

concluded that S.I.'s testimony was not "false"; instead, her testimony changed from "I'm not sure" to "I'm sure now." (App'x to Resp. vol. 3 Ex. 34, at 1–2.) Finally, the court concluded that the state did not violate *Giglio* because S.I. said on the record that she didn't tell the prosecution or law enforcement that she "recently recalled" information about L.A. (App'x to Resp. vol. 3 Ex. 34,at 2.) As a result, the court concluded that Counsel could not "have been ineffective for failing to raise a baseless claim." (App'x to Resp. vol. 3 Ex. 34, at 2.)

First, the Rule 3.850 Court's conclusion did not involve an unreasonable determination of the facts. When reviewing "the sufficiency of the evidence to support a conviction," courts must "consider all evidence in the light most favorable to the government and draw all reasonable inferences in favor of the jury's verdict." *United States v. Pendergrass*, 995 F.3d 858, 876 (11th Cir. 2021); *see also Caylor v. State*, 78 So. 3d 482, 500–01 (Fla. 2011). Additionally, federal habeas courts defer to state court determinations under state law and on questions of fact. *See Titlow*, 571 U.S. at 18 ("The prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence'" (quoting 28 U.S.C. § 2254(e)(1))); *Beard v. Kindler*, 558 U.S. 53, 55 (2009) ("A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment'" (quoting *Coleman v. Thompson*, 501 U.S. 772, 729 (1991))). Based on the law and facts before it, the Rule 3.850 Court concluded that (1) the jury's conclusion and appellate affirmance demonstrated that Petitioner's conviction was supported by the facts and Florida state law, (2) that S.I.'s testimony was not false, and (3) that there was no *Giglio* violation because, based on the facts in the record, S.I. never informed the prosecution or law enforcement that she "recently recalled" information about L.A. (App'x to Resp. vol. 3 Ex. 34, at 1–2.) This Court's review of the Rule 3.850 Court's order fails to show that its factual findings

9

were "unreasonable," and Petitioner has not rebutted those findings by "clear and convincing evidence." *Titlow*, 571 U.S. at 18.

Additionally, the Rule 3.850 Court's decision on Claim 1 did not involve an unreasonable application of clearly established federal law. When considering the record, Petitioner's arguments, and the state's response, the court concluded that, had Counsel filed a motion for a new trial based on any of the claims presented by Petitioner, it would have been without merit. (*See* App'x to Resp. vol. 3 Ex. 34, at 2.) In federal court, as in Florida state court, counsel is not ineffective for failing to raise meritless arguments. *See, e.g.*, *Knowles*, 556 U.S. at 125–28 (recognizing that there exist "no 'prevailing professional norms' that prevent counsel from recommending that a plea be withdrawn when it is almost certain to lose"); *Carruth v. Comm'r, Ala. Dep't of Corr.*, 93 F.4th 1338, 1359 (11th Cir. 2024) (ruling that "counsel could not have been ineffective for omitting a nonmeritorious point from their argument and, similarly, their performance also could not have been prejudicial"); *Wilkins v. United States*, 682 F. Supp. 3d 1137, 1148 n.8 (S.D. Fla. 2023) (recognizing that "a lawyer cannot be ineffective for failing to make a meritless augment"); *Hilton v. State*, 326 So. 3d 640, 651 (Fla. 2021) ("[C]ounsel cannot be considered ineffective for failing to raise a meritless argument . . . ."). Accordingly, the Rule 3.850 Court's application of *Strickland* to this claim is not "contrary to" or otherwise involve an "unreasonable application of" clearly established federal law, *see Hall*, 310 F.3d at 690, and Claim 1 is therefore denied.

**B.**   **The Rule 3.850 Court's decision on Claim 2 did not involve an unreasonable application of clearly established federal law.**

In Claim 2, Petitioner argues that Counsel was ineffective for providing "unethical" advice prior to trial that "embarrassed" Petitioner's defense and violated his right to present a defense at trial. (Pet. 17.) Petitioner specifically alleges that Counsel advised him to call his father and tell

10

Petitioner's wife, who was likely to testify for the state, that he was "sorry" and to "take it easy on him." (Pet. 17.) Petitioner did so, but his call was recorded and subsequently provided to the State Attorney. (Pet. 18–19.) Petitioner alleges that Counsel's advice violated the Florida Rules of Professional Conduct and was detrimental to his defense. (Pet. 19–20.)

The Rule 3.850 Court held an evidentiary hearing on Claim 2, during which Counsel testified that he never advised Petitioner to do anything contained in Claim 2 and, in addition, Counsel told Petitioner that jail phone calls are recorded and that he had "no expectation of privacy." (App'x to Resp. vol. 3 Ex. 35, at 1–2.) The court found Counsel's testimony on the issue to be credible and denied Petitioner's claim. (App'x to Resp. vol. 3 Ex. 35, at 2)

"Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011). Accordingly, even under a *de novo* standard of review, a federal habeas court must defer to the state post-conviction court's credibility determinations. *See id.* (noting that the Eleventh Circuit "consider[s] questions about the credibility and demeanor of a witness to be questions of fact" (citing *Freund v. Butterworth*, 165 F.3d 839, 862 (11th Cir. 1999) (en banc))). But "when a state court's adjudication of a habeas claim 'results in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,'" a habeas court "is not bound to defer to unreasonably-found facts or to the legal conclusions that flow from them." *Jones v. Walker*, 540 F.3d 1277, 1288 n. 5 (11th Cir. 2008) (en banc) (alterations adopted and citations omitted).

First, the Rule 3.850 Court's determination of the facts was not "unreasonable . . . in light of the evidence presented in the State court proceeding." *Jones*, 540 F.3d at 1288 n.5. While Petitioner testified during the evidentiary hearing that Counsel told him to "ask [his] father to

11

contact Jessica Wingo," Petitioner's wife, "[a]nd tell her that [Petitioner was] sorry, to take it easy on [him]," (Evid. Hearing Tr. 13), Counsel testified that he did not (Evid. Hearing Tr. 28). In fact, Counsel testified that he told Petitioner, just like "every [incarcerated] client" that Counsel represented, that "[p]hone calls made from jail or from holding cells were recorded[,]" and that Petitioner had "no expectation of privacy on jail-recorded calls." (Evid. Hearing Tr. 28–29.) Weighing this evidence, the Rule 3.850 Court concluded that Counsel's testimony was credible, and this Court does not find, based on the facts and the evidence, that this was an "unreasonable determination of the facts in light of the evidence presented . . . ." *Jones*, 540 F.3d at 1288 n.5.

Additionally, based on these facts, the Rule 3.850 Court's decision was not "contrary to" or otherwise involve an "unreasonable application of" clearly established federal law. *Hall*, 310 F.3d at 690. After finding that Counsel's testimony regarding Claim 2 was credible, the Rule 3.850 Court concluded that Counsel was not ineffective because he never told Petitioner to either call his father or otherwise attempt to convince his wife not to testify. (App'x to Resp. vol. 3 Ex. 35, at 1–2.) Under these facts, the Rule 3.850 Court concluded that Counsel's performance was not ineffective. (App'x to Resp. vol. 3 Ex. 35, at 2.) Petitioner has failed to demonstrate that this ruling is "contrary to" or otherwise involved an "unreasonable application of" *Strickland*, *see Hall*, 310 F.3d at 690, and Claim 2 is therefore denied.

C.    **The Rule 3.850 Court's decision on Claim 3 did not involve an unreasonable determination of the facts or application of clearly established federal law.**

Third, Petitioner alleges that Counsel was ineffective for failing to object to and request a *Richardson*[4] hearing following S.I.'s "changed" testimony. (Pet. 22.) Petitioner specifically argues that S.I.'s changed testimony constitutes "a trial by surprise and ambush," and that, while Counsel "impeached" her changed testimony, this was insufficient to create reasonable doubt. (Pet. 23–24.)

---

[4] *Richardson v. State*, 246 So. 2d 771 (Fla. 1971).

The Rule 3.850 Court denied this claim without an evidentiary hearing. (*See* App'x to Resp. vol. 3 Ex. 34, at 2.) Considering Petitioner's Rule 3.850 Motion and the state's response, the court first indicated that "a *Richardson* hearing is to be held when there is a failure of the state to provide discovery to the witness." (App'x to Resp. vol. 3 Ex. 34, at 2.) However, the court concluded that a *Richardson* hearing was "unwarranted" because S.I. never "told law enforcement nor the prosecutor that she recently recalled the information about" L.A. (App'x to Resp. vol. 3 Ex. 34, at 2.) Going further, the Rule 3.850 Court concluded that "such a minor change in testimony would not have justified the court imposing the extreme remedy of excluding the witness from testifying even if" a discovery violation was found. (App'x to Resp. vol. 3 Ex. 34, at 2.) As a result, the Rule 3.850 Court concluded that Petitioner could not demonstrate either deficient performance or prejudice. (App'x to Resp. vol. 3 Ex. 34, at 2.)

Petitioner has failed to demonstrate that the Rule 3.850 Court's conclusion involved an unreasonable determination of the facts. First, the Rule 3.850 Court concluded that, based on the facts and record before it, "a *Richardson* hearing was unwarranted." (App'x to Resp. vol. 3 Ex. 34, at 2.) Courts have consistently held that a "state court's interpretation of state law . . . binds a federal court siting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam). Indeed, a "state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985). It is not the province of this Court to re-examine the Rule 3.850 Court's determination of whether a *Richardson* hearing is necessary, as "federal courts [on habeas review] may not second guess state courts on questions of state law," *Green v. Ga.*, 882 F.3d 978, 988 (11th Cir. 2018), and Petitioner has failed to demonstrate that the Rule 3.850 Court's conclusion was "unreasonable" based on the facts before it.

13

Nor has Petitioner demonstrated that, in light of those facts, the Rule 3.850 Court's conclusion was either "contrary to" or involved an "unreasonable application of" clearly established federal law. *Hall*, 310 F.3d at 690. As previously discussed, Counsel cannot be deemed ineffective for failing to raise a meritless argument. *See, e.g.*, *Knowles*, 556 U.S. at 125–28; *Carruth*, 93 F.4th at 1359; *Wilkins*, 682 F. Supp. 3d at 1148 n.8; *Hilton*, 326 So. 3d at 651. Since a *Richardson* hearing was unwarranted, Counsel cannot be deemed ineffective for failing to request one. Accordingly, Petitioner has failed to demonstrate deficient performance or prejudice, and the Rule 3.850 Court's decision was not "contrary to" an "unreasonable application of" *Strickland*. Claim 3 is therefore denied.

### D. The Rule 3.850 Court's decision on Claim 4 did not involve an unreasonable application of clearly established federal law.

Under Claim 4, Petitioner alleges that Counsel was ineffective for failing to investigate L.A. prior to trial. (Pet. 27.) Petitioner indicates that his father had looked L.A. up on FaceBook and discovered that she lived in Tampa. (Pet. 29.) In turn, he argues that, had Counsel conducted a proper investigation, he would have discovered that S.I could not have gone to L.A.'s home, like she testified. (Pet. 28–30.)

The Rule 3.850 Court held an evidentiary hearing on this claim in which Counsel testified that he did not investigate L.A. because (1) S.I. said during her deposition that she never sent messages or pictures of L.A. to Petitioner and (2) Counsel did not expect the state to call L.A. as a witness. (App'x to Resp. vol. 3 Ex. 35, at 2.) Further, Counsel testified that "it would not have made a difference if he had conducted an investigation into [L.A.] because the jury found [S.I.] to be credible," as reflected by the verdict. (App'x to Resp. vol. 3 Ex. 35, at 2.) However, despite Petitioner's claim that his father discovered that L.A. lived in Tampa, he did not testify at this hearing. (*See generally* Evid. Hearing Tr.) In light of this, the Rule 3.850 Court ruled that it was

"purely speculation that conducting an investigation into [L.A.] would have produced anything of value . . . ." (App'x to Resp. vol. 3 Ex. 35, at 2.) Because a court requires "more than speculation and conjecture" to grant relief on an ineffective assistance of counsel claim, the Rule 3.850 Court denied Petitioner's claim. (App'x to Resp. vol. 3 Ex. 35, at 2–3 (citing *Connor v. State*, 979 So. 2d 852 (Fla. 2007); *Maharaj v. State*, 778 So. 2d 944 (Fla. 2000).)

First, Petitioner has failed to prove that the Rule 3.850 Court's conclusion involved an unreasonable determination of the facts. In his Amended Motion for Post-Conviction Relief filed with the Rule 3.850 Court, Petitioner's allegations generally mirror those included in the instant Petition. (*Compare* App'x to Resp. vol. 2 Ex. 30, at 4–45 *with* Pet. 27–30.) Petitioner has not rebutted the Rule 3.850 Court's finding that this claim was "speculative" by "clear and convincing evidence," *Titlow*, 571 U.S. at 18, and this Court does not independently find that the Rule 3.850 Court's conclusion was "unreasonable," (*see* App'x to Resp. vol. 3 Ex. 35, at 2).

Nor can Petitioner prove that the Rule 3.850 Court's conclusion was "contrary to" or involved "an unreasonable application of" clearly established federal law. *Hall*, 310 F.3d at 690. In light of the facts before it, the Rule 3.850 Court concluded that Petitioner needed "more than speculation and conjecture" to support his ineffective assistance of counsel claim under Florida law. (App'x to Resp. vol. 3 Ex. 35, at 2–3 (citing *Connor*, 979 So. 2d 852; *Maharaj*, 778 So. 2d 944).) This finding is consistent with this Circuit's interpretation of *Strickland*. *See, e.g.*, *Perkins v. United States*, 73 F.4th 866, 880 (11th Cir. 2023) (recognizing that "a petitioner must be able to point to evidence of prejudice that amounts to more than mere speculation" and, while an attorney's failure to conduct a "thorough investigation of law and facts" could rise to ineffective assistance, it "does not fall below *Strickland*'s standard so long as a reasonable lawyer could have decided, under the circumstances, not to investigate particular evidence"); *cf. Strickland*, 466 U.S.

15

at 702 (1984) (Brennan, J., concurring in part and dissenting in part). Accordingly, Claim 4 is denied.

>    **E.**    **Petitioner's claim that Counsel filed a "boilerplate" Judgment of Acquittal Motion lacks merit.**

In Claim 5, Petitioner argues that Counsel's use of a "boilerplate" oral Judgment of Acquittal motion rendered his representation "ineffective." (Pet. 33.) Petitioner specifically argues that the state failed to prove that he used a photo of L.A. for his own "amusement, entertainment, or sexual gratification," as required for the conviction, and that Counsel knew this because he raised the argument during sentencing. (Pet. 33–34.) However, according to Petitioner, Counsel's failure to raise this argument in his Judgment of Acquittal Motion or in closing arguments prejudiced him because, had it been raised, "the [trial] court would have been required to acquit Petitioner of Count 2, and the charge would have 'NOT' been presented to the jury." (Pet. 35.)

After briefing, the Rule 3.850 Court dismissed this claim without an evidentiary hearing. The Court concluded that "Counsel for [Petitioner] did not merely submit boiler plate language when arguing for a Judgment of Acquittal." (App'x to Resp. vol. 3 Ex. 34, at 3.) Instead, the Rule 3.850 Court highlighted that Counsel "pointed out to the court there was no evidence of an image or recording," noted that "there was no testimony to show that [L.A.] had an expectation of privacy as required by the charge," and reiterated that L.A. "never testified." (App'x to Resp. vol. 3 Ex. 34, at 3.) Further, Counsel argued that "the charge should be reduced to a misdemeanor" since Petitioner "was charged as a principal." (App'x to Resp. vol. 3 Ex. 34, at 3.)

First, Petitioner failed to demonstrate that the Rule 3.850 Court's determination of the facts was unreasonable, as the record indicates that Counsel specifically raised in his Judgment of Acquittal Motion that (1) the state failed to present "any evidence of an image" of L.A., (2) there was no testimony that L.A. had "an expectation of privacy," and (3) L.A. did not testify. (Tr. Trans.

16

vol. 3 [DE 13-5] 3.) These facts alone are sufficient to show that Counsel raised a fact-specific motion requesting that the trial court acquit Petitioner of Ground 2 of the Information.

Further, in light of these facts, Petitioner fails to show that the Rule 3.850 Court's decision was "contrary to" or "involved an unreasonable application of" clearly established federal law. *Hall*, 310 F.3d at 690. Considering the facts and evidence presented before it, the Rule 3.850 Court concluded that Counsel's representation of Petitioner was not deficient as applied to his Motion for Judgment of Acquittal because he "did not merely submit boiler plate language when arguing for a Judgment of Acquittal." (App'x to Resp. vol. 3 Ex. 34, at 3.) In light of those facts, Counsel made a "proper motion for judgment of acquittal," *see Austin v. Sec'y, Fla. Dep't of Corr.*, No. 14-cv-493, 2017 WL 2021679, at *11 (M.D. Fla. May 12, 2017) (noting that a "proper motion for judgment of acquittal must list specific grounds on which it is based"), and Petitioner has failed to demonstrate either deficient performance or prejudice.

**F.     The Rule 3.850 Court's decision on Claim 6 did not involve either an unreasonable determination of the facts or an unreasonable application of clearly established federal law.**

In Claim 6 of the Petition, Petitioner claims that Counsel was ineffective for failing to convey a plea deal to Petitioner prior to trial. (Pet. 37.) Specifically, Petitioner alleges that a bailiff entered Petitioner's holding cell before a hearing and offered him a plea deal, but he declined because Petitioner didn't have a chance to discuss it with Counsel. (Pet. 37–8.) However, by the time Counsel had a chance to review the offer, it was revoked. (Pet. 38.) Petitioner alleges that he would have accepted the plea deal if it was in his best interest, and that Counsel said he received the offer via email but didn't have time to go over it because he was "busy with another case." (Pet. 38–40.)

Following briefing and an evidentiary hearing, the Rule 3.850 Court denied Petitioner's claim. Similar to Claim 2, the Court heard testimony from Petitioner, Counsel, and the attorney

17

that was retained for the case "that had been severed from the total charging document" ("Second Counsel"). (*See* Evid. Hearing Tr. 44.) While Petitioner argued that the bailiff offered him a plea agreement, that he "heard there was an email" that outlined the plea agreement, and that Counsel had informed Petitioner's father that the plea agreement was "a ten-year plea offer," (Evid. Hearing Tr. 9–13), Counsel testified that he was "certain" that he "conveyed every plea offer to" Petitioner and that he did not recall "a straight-up ten-year plea offer" ever being "on the table." (Evid. Hearing Tr. 30–31.) The Court ultimately found Counsel to be credible and ruled that there had "been no ineffective assistance of counsel." (App'x to Resp. vol. 3 Ex. 35, at 3–4.)

As discussed above, it "is the province and function of the state courts" to determine the credibility of a witness, *Consalvo*, 664 F.3d at 845, and a federal habeas court must defer to a state post-conviction court's credibility determinations *unless* the state court's adjudication "result[s] in a decision that [i]s based on an unreasonable determination of the facts in light of the evidence presented," *Jones*, 540 F.3d at 1288 n. 5. This Court fails to find any indication that the Rule 3.850 Court's decision involved an "unreasonable determination of the facts," and Petitioner fails to rebut the court's conclusions by "clear and convincing evidence." *Id.* Therefore, this Court defers to the Rule 3.850 Court's determination of the witnesses' credibility.

In light of those facts, Petitioner fails to show that the Rule 3.850 Court's decision was "contrary to" or involved an "unreasonable application of" clearly established federal law. *Hall*, 310 F.3d at 690. Weighing the facts and credibility of the witnesses, the Court concluded that "there was no plea offer of only ten years Florida State Prison without probation," despite Petitioner's claim otherwise. (App'x to Resp. vol. 3 Ex. 35, at 4.) Based on those facts, the Rule 3.850 Court concluded that there was "no ineffective assistance of counsel," (App'x to Resp. vol. 3 Ex. 35, at 4), and Petitioner has failed to demonstrate that this finding in any way conflicts

18

with *Strickland*.[5] Accordingly, Petitioner fails to meet his burden under AEDPA and Claim 6 is denied.

> **G.**    **Petitioner's claim regarding the deficiency of the state's information is a matter of state law, and Petitioner fails to overcome the deference owed to the state court's determination of this claim on the merits.**

Under Claim 7, Petitioner argues that Counsel was ineffective for failing to file a Motion to Dismiss Count 2 of the Information because, when the state obtained testimony in support of the charge, it did not place the material witness under oath. (Pet. 44.) Specifically, Petitioner complains that the statement of probable cause, forensic interview report, investigative summary, and Detective Seargent St. Laurent's interview of S.I. all fail to mention L.A., yet Petitioner was charged for a crime that listed L.A. as a victim. (Pet. 45.) Further, during her deposition, S.I. stated that she "didn't think" that she sent Petitioner any inappropriate images or videos of L.A. (Pet. 45.) Accordingly, Petitioner argues that Counsel should have filed a Motion to Dismiss Count 2 of the Information immediately after the deposition, and had Counsel done so, S.I. would not have been able to change her testimony prior to trial. (Pet. 46–48.) Petitioner also alleges in a conclusory fashion that the state "tampered" with witness S.I. by providing her with a deposition transcript prior to trial. (Pet. 49.)

Courts have consistently held that a "state court's interpretation of state law . . . binds a federal court siting in habeas corpus." *Bradshaw*, 546 U.S. at 76. Indeed, a "state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a

---

[5] While not determinative on its own, it is again noteworthy that Petitioner turned down plea offers in both matters, and in one instance signed, and later recanted, a plea agreement that "called for a plea straight-up to the judge with a cap of 12 years," with probation left to the judge's discretion. (Evid. Hearing Tr. 23–24, 30.) Additionally, while Petitioner indicates in the Petition that the bailiff didn't know the terms of the agreement, he previously indicated that the plea was for "ten years running concurrent with both cases." (Evid. Hearing Tr. 8.) However, according to Counsel, the only ten-year plea offer that Petitioner received in this case came with "20 years [of] probation" and was not a "straight-up ten-year plea offer." (Evid. Hearing Tr. 30.)

constitutional nature is involved." *Machin*, 758 F.2d at 1433. Accordingly, a Florida state court's interpretation of the sufficiency of an information constitutes a question of Florida law. *See DeBenedictis v. Wainwright*, 674 F.2d 841, 842 (11th Cir. 1982) ("The sufficiency of a state indictment or information is not properly the subject of federal habeas corpus relief unless the indictment or information is so deficient that the convicting court is deprived of jurisdiction"); *see also Rockett v. Sec'y, Dep't of Corr.*, No. 8:08-cv-1417-T-23EAJ, 2014 WL 3809146, at *24 (M.D. Fla. Aug. 1, 2014) (concluding that, to the extent that the petitioner challenged "the sufficiency of the information," no relief was warranted because such a claim "does not present a federal constitutional question" (citing 28 U.S.C. § 2254(a), *Estell v. McGuire*, 502 U.S. 62, 67 (1991))).

The Rule 3.850 Court concluded that, based on the facts and record before it, "[e]ach Information in [Petitioner's] cases was properly sworn." (App'x to Resp. vol. 3 Ex. 34, at 3.) It is not the province of this Court to re-examine the Rule 3.850 Court's determination of whether the Information in Petitioner's criminal case was sufficient, as "federal courts [on habeas review] may not second guess state courts on questions of state law." *Green*, 882 F.3d at 988; *see also DeBenedictis*, 674 F.2d at 842; *Rockett*, 2014 WL 3809146, at *24. Petitioner has therefore failed to demonstrate that the Rule 3.850 Court's conclusion was "unreasonable" based on the facts before it.

Nor has Petitioner demonstrated that, to the extent this Claim is brought under federal law, the Rule 3.850 Court's decision was "contrary to" or involved an "unreasonable application of" clearly established federal law. *Hall*, 310 F.3d at 690. After concluding that there was "nothing to show any legal deformity in the Information warranting a motion to dismiss," the Rule 3.850 Court held that "counsel cannot be said to be ineffective for failing to file a baseless motion . . . ." (App'x

20

to Resp. vol. 3 Ex. 34, at 3.) Such a finding is consistent with clearly established federal law. *See, e.g.*, *Knowles*, 556 U.S. at 125–28; *Carruth*, 93 F.4th at 1359; *Wilkins*, 682 F. Supp. 3d at 1148 n.8. Accordingly, Petitioner's Claim 7 is denied.

**H.      Petitioner's claim regarding Counsel's failure to object to his scoresheet lacks merit.**

In Claim 8, Petitioner argues that Counsel's failure to object to Petitioner's scoresheet at sentencing amounted to ineffective assistance because Petitioner's 37.6 "points" corresponded to Petitioner receiving a "non-state prison" sanction for Counts 1 through 3. (Pet. 52.) Since Counsel failed to object, the issue was not preserved for direct appeal, and Petitioner received a state prison sanction. (Pet. 52–53.)

The Rule 3.850 Court denied this claim without hearing. The Rule 3.850 Court pointed out that Petitioner had a flawed understanding of the Florida sentencing code, opining that Petitioner's argument that "the law requires if the sentencing point[s] are less than 44, a non-state prison sanction is required" was "incorrect." (App'x to Resp. vol. 3 Ex. 34, at 3.) Instead, the court indicated that a non-state prison sanction is "the lowest *permissible* sentence" for defendants with less than 44 sentencing points, and that Petitioner was therefore "not entitled to a non-prison sanction." (App'x to Resp. vol. 3 Ex. 34, at 3.) The Rule 3.850 Court therefore concluded that "[C]ounsel cannot be said to be ineffective for failing to make a futile objection." (App'x to Resp. vol. 3 Ex. 34, at 3.)

Again, a "state court's interpretation of state law . . . binds a federal court siting in habeas corpus," *Bradshaw*, 546 U.S. at 76, and a "state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved," *Machin*, 758 F.2d at 1433. Accordingly, the Rule 3.850 Court's interpretation of the Florida state sentencing code involves only an interpretation of state law, not federal law, this Court is bound

21

by those findings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (per curiam) ("In the area of state sentencing guidelines in particular, we consistently have held that federal courts can[]not review a state's alleged failure to adhere to its own sentencing procedures").

Further, to the extent this Claim is raised under federal law, Petitioner has failed to show that the Rule 3.850 Court's findings are "contrary to" or otherwise involve an "unreasonable application of" clearly established federal law. *Hall*, 310 F.3d at 690. The Rule 3.850 Court concluded that Petitioner was not entitled to relief under Florida law, and Counsel therefore cannot be deemed ineffective for failing to raise a futile argument. (App'x to Resp. vol. 3 Ex. 34, at 3.) Such a finding is consistent with clearly established federal law in this circuit, *Knowles*, 556 U.S. at 125–28; *Carruth*, 93 F.4th at 1359; *Wilkins*, 682 F. Supp. 3d at 1148 n.8, and Claim 8 must therefore be denied.

## I.       Petitioner's "cumulative error" claim is without merit.

In Petitioner's final claim for relief, he argues that Claims 1, 2, and 6 "are cumulative to Count 2 of the" Information which denied him a fair trial. (Pet. 55.) Respondent argues that Petitioner has not demonstrated "multiple specific instances of deficient performance," meaning that "there are no errors to accumulate . . . ." (Resp. 33 (quoting *Sneed v. Fla. Dep't of Corr.*, 496 F. App'x 20, 28 (11th Cir. 2012)).

"The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 564 (11th Cir. 2009); *see also Tyler v. Sec'y, Dep't of Corr.*, No. 24-cv-363, 2025 WL 2604534, at *20 (M.D. Fla. Sep. 9, 2025), *appeal filed*, No. 25-13629 (11th Cir. Oct. 17, 2025). However, more broadly, "[t]he cumulative error doctrine provides that an aggregation of non-reversible errors . . . can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Chalker*, 966 F.3d 1177, 1193 (11th Cir. 2020) (applying the doctrine

22

to alleged errors made by the trial court during the petitioner's trial (quoting *United States v. Margarita Garcia*, 906 F.3d 1255, 1280 (11th Cir. 2018))). When addressing general claims of cumulative error, the Eleventh Circuit requires that courts consider "the validity of each claim individually, and then examin[e] any errors" found "in the aggregate." *Chalker*, 966 F.3d at 1193 (quoting *Margarita Garcia*, 906 F.3d at 1280). Then, courts must consider those errors "in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *Chalker*, 966 F.3d at 1193 (quoting *Margarita Garcia*, 906 F.3d at 1280). But "where there is no error in any of the trial court's rulings, the argument that cumulative trial error requires [the reversal of] the defendant's convictions is without merit." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (quoting *United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005)) (cleaned up).

As discussed above, Petitioner has failed to demonstrate the existence of any error. Therefore, the Court is left with "nothing to accumulate," *see Morris*, 677 F.3d at 1132, and Petitioner's "cumulative error" argument is without merit.

## IV.    Petitioner is Not Entitled to an Evidentiary Hearing.

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted); *see also Jenkins v. Comm'r, Ala. Dep't of Corr.*, 963 F.3d 1248, 1278 n.16 (11th Cir. 2020) ("[I]f, and only if, the state habeas petitioner clears § 2254(d)'s hurdles, may an evidentiary hearing be granted" (citations omitted)). Petitioner has failed to demonstrate that any of his allegations, if true, would entitle him to relief. As a result, Petitioner is not entitled to an evidentiary hearing on any of the claims asserted.

## V. Certificate of Appealability

As amended, effective December 1, 2009, Rules Governing § 2254 Proceedings, Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing § 2254 Cases in the United States District Courts. A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* Rule 11(b), Rules Governing § 2254 Cases in the United States District Courts.

After review of the record, Petitioner is not entitled to a certificate of appealability. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because this Court has rejected Petitioner's constitutional claims on the merits, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, reasonable jurists would not find this Court's assessment of Petitioner's claims either "debatable or wrong." *Id.* As a result, Petitioner cannot satisfy the *Slack* test, and no certificate of appealability shall issue in this case.

## VI. Conclusion

Having considered the petition, the record, and being fully advised, it is hereby **ORDERED AND ADJUDGED** that:

1. The Petition [DE 1] is **DENIED**.

2. No certificate of appealability shall issue.

25

    3.  The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 27th day of March, 2026.

_____
RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc:    counsel of record

**Stephen Allan Wingo,** *pro se*
Sumter Correctional Institution
Inmate Mail/Parcels
9544 County Road 476B
Bushnell, FL 33513